TALIAFERRO, Judge.
.This suit is the sequence of a controversy between the parties thereto, broth-ersTin-law, following the collapse of what is alleged by the plaintiff to have been a joint adventure between them. The amount sued, for is $348.67, one-half of the amount expended by plaintiff in prosecution of the venture to the point where the parties became aware that the dream of profits from its activities was purely mythical.
Plaintiff alleged that on or about July 17, 1948, defendant contacted him and stated that he had been informed that the various oil producing companies in Venezuela were discarding their broken oil field gauges and similar equipment instead of repairing them, and that consequently, a large amount of these damaged gauges, etc. had accumulated there; that, if true, opportunity to make money by establishing repair shops there seemed favorable; that "following prolonged discussion, the parties reached a verbal agreement to the effect that plaintiff would go to Venezuela to investigate the accuracy of the information gained by the defendant and “if advisable, purchase or repair gauges and other equip■ment in need of repair for the joint benefit of the parties”; that it was further agreed that all expenses of the trip, etc. would be shared equally, and all profits or losses from the venture be likewise borne by them; that in keeping with the agreement, petitioner, on August 16, 1948, flew to Venezuela, but before going, defendant offered to advance him some expense money, which was declined for the reason that the expenses could only be accurately determined on his return; that after arriving in Venezuela petitioner contacted approximately 60 oil companies, over a period of 9 days, and definitely learned that there was small, if any, basis to the information defendant had imparted to him; and, this being true, he quickly concluded that the object and purpose of the venture could not be profitably prosecuted, *483 and he returned to Shreveport, Louisiana, on August 27, 1948. '
Plaintiff further alleged that promptly on his arrival in Shreveport, he got in touch with defendant and rendered to him (verbally, it seems) a “detailed report” of his trip, and it was verbally agreed “that as the venture would not be a profitable one, the same would be immediately abandoned”; that at that time petitioner informed defendant of the amount of the expenses incurred by him in making the trip to and from Venezuela, and while there, and he agreed to pay one-half thereof, but has not done so after amicable de-mand-
Articulately, defendant denies each alie-gation of the petition, save that of his residence.
From judgment for plaintiff, as by him prayed, defendant prosecutes appeal to this Court.
The allegations of plaintiff’s petition, summarized above, are supported by his testimony in court. Defendant, as a witness on his own behalf, denied that he entered into a partnership or joint venture with plaintiff. His version of the understanding between them, was: “He was to go down there and get this equipment that was to be repaired and let me know how much was down there and I was to bring my shop and come down and repair this equipment, and he was to get 50 per cent of it as a commission.”
He said there was no agreement on his part to pay any portion of the expenses necessary for plaintiff to make the trip in furtherance of their preliminary agreement. He further testified that he was not financially able, himself, to make the. trip, and so informed plaintiff. He also says there was no agreement between them concerning losses, if any, had the venture culminated in establishing the repair business in Venezuela, and that he (referring to plaintiff) “generally understood it would be his expense. We didn’t come to any concrete agreement on it at that time.” This testimony is flatly contradicted by plaintiff and his wife, both of whom swore positively that immediately prior to taking the plane for Venezuela, in fact, while waiting at the depot for the announcement to board it, defendant approached them and asked: “Are you sure you aren’t going to need any money before you get back?” to which plaintiff replied: “No, let me pay f°r all of it and we will settle it when I get back.”
Defendant denied that such a conversation took place, but does admit that at a filling station, on the-way to the airport, he asked plaintiff “if he had enough money” and added: “That was just intended for a loan to take Care of incidentals untji -he could get a check cashed.” When asked the amount of cash he then had on him, he replied: “Approximately $10.00.” The Court then elicited testimony from him as follows:
“You mean you had $10.00 on you and you asked him if he needed any money? yeS) sir> j imeant it merely to buy something like coffee or something like that * * * incidentals *' * * until he got a check cashed.
„He was on a trfp t0 Venezuela and yQU had $moo and yoü asked ^ if he needed mon-ey? sir>
“Did you know how much money he had 011 him? No, sir, but he talked like he didn’t have much, because he was trying to §iet a check cashed to buy that plane ticket.”
This testimony, when considered in the light of existing circumstances, carries no probative weight, other than being favorable to plaintiff. It is well to recall that the conversation discussed was immediately before plaintiff departed for Venezuela, just prior to the purchase of plane ticket, He is a business man of many years experience, and knowing for some time in ad-vanee of making the trip that he was going to make it, he would surely not wait until a few minutes before time to take the plane to procure cash to pay for the ticket. Defendant says plaintiff talked as though he was short of cash money. This could not be true as he must have then had on him the amount expended on the trip', near $700, and yet, defendant was generous enough to offer a loan of cash to pay for coffee, etc.
*484 The impression this testimony made upon the trial judge is best reflected from the colloquy between them, quoted above.
Defendanc contends, and testified, that service of process in this suit is the only demand made upon him by plaintiff for the amount sued for, while plaintiff and his wife are positive that immediately upon the return from Venezuela they visited defendant’s home and at that time all details of the trip were fully discussed; that plaintiff gave from notes he had made, a full account of the expenses of the trip, and defendant then and there stated that he would reimburse plaintiff one-half the amount; that thereafter an itemized account was given defendant.
The testimony convinces us, as it did the trial judge, that plaintiff’s version of the conversation and agreement between defendant and him, antecedent to the trip to Venezuela, is the correct one.
Defendant’s business, as stated by him, is that of repairing industrial instruments and oil field equipment. Plaintiff was wholly without experience in that sort of business. It was but natural for plaintiff to become very much interested in the proposition suggested by defendant, but, it is not reasonable to think he would be willing to advance considerable money, wholly at his own expense, to determine the possibilities of the venture when it is conceded he was to share only to the extent of 50% of the profits.
Defendant assails the correctness of the expense account sued on, especially the charge of $200.27 incurred during the nine days in Venezuela. This charge consisted of transportation fares, hotel bills, amounts paid for meals other than at hotels, and other miscellaneous outlays. The average daily expense did not exceed $22.50 per day, which, to us does not appear excessive, all things considered.
Plaintiff supported the account with his own testimony, and with documentary evidence for over two-thirds of it. Defendant has not offered any countervailing evidence.
We perceive of no error in the Lower Court’s resolution of the sharp controversy and factual issues between the parties to this suit; and, for this reason, and those given herein, the judgment from which appealed is affirmed with costs.